FEDERAL BOND & MORTGAGE CO. *v.* BURSTEIN.

1. USURY—CONTRACTS—MORTGAGES.—TRUSTS—JUDICIAL NOTICE.
   A contract by which defendants agreed to pay to plaintiff, a bond and mortgage company, a charge of 8 per cent. for procuring a loan and rendering certain services in connection therewith cannot be said to be usurious because plaintiff assumed the attitude in the contract of an agent of defendants to float a mortgage loan with itself as trustee; this method of raising money to finance large and expensive structures in the cities having be-

come so common that the courts may take judicial notice of the relative position of trust company and client in deals of this character.

2. DAMAGES—BREACH OF CONTRACT—MEASURE OF DAMAGES.

In an action for damages for the breach of a contract for the procuring of a construction loan, plaintiff's measure of damages was the contract price less what it would necessarily have cost it to float the loan and perform the services agreed upon.

3. SAME.

Where it was plaintiff's custom, in floating a loan, to advertise it and go to selling bonds at once, which necessitated the issuance of interim certificates, the cost of same, being incidental to the loan, should be deducted from the contract price in determining plaintiff's damages, and the fact that the particular loan was not yet authorized by the securities commission was immaterial.

4. SAME.

The money paid by plaintiff as premium to repurchase the interim certificates sold and the interest thereon were not proper items to deduct because said expense would not ordinarily be incurred in floating a loan.

5. SAME—OVERHEAD EXPENSE.

The trial court was in error in instructing the jury not to consider plaintiff's overhead expense in determining its damages, since the proportionate expense, when ascertained, should have been deducted from the contract price.

Error to Wayne; Mayne (Frederick W.), J., presiding. Submitted October 31, 1922. (Docket No. 69.) Decided March 22, 1923.

Assumpsit by the Federal Bond & Mortgage Company against Isadore Burstein and another for breach of a contract for the procuring of a construction loan. Judgment for plaintiff. Defendants bring error. Reversed.

*Guy A. Miller* (*Charles E. Bowles,* of counsel), for appellants.

*Stevenson, Carpenter, Butzel & Backus* (*Samuel R. Williams,* of counsel), for appellee.

BIRD, J.   The defendants owned certain real estate in the city of Detroit and were desirous of erecting thereon an apartment building.   They had some money but not sufficient to finance the project.   They applied to plaintiff to secure for them a mortgage loan of $125,000.   The matter was talked over, an agreement reached and a written contract made, one section being as follows:

"The party of the second part agrees that it will counsel and advise with and give the borrower the benefit of its wide experience concerning the matters in connection with the proposed construction in general, and said party of the second part further agrees that, to the extent of the loan hereby applied for, it will pay, on behalf of the borrower, those persons entitled to compensation who have been engaged in the erection of the building proposed to be constructed under this application, and, to the extent of such payments, to take such steps as the party of the second part may deem practical and necessary to protect the borrower's interests from lien claims, irregular payments and unjust demands; but it is expressly understood and agreed that said second party does not hereby incur any liability for any mistake by it or its agents while acting as aforesaid.   In consideration of the aforesaid and in consideration, further, of the services of the said second party in procuring and negotiating said loan, inspecting said buildings when necessary, for the protection of the borrower's interests in connection with the payments aforementioned, and for various and sundry clerical expenses incident thereto, the borrower agrees to pay the parties of the second part a commission of eight (8%) on the total amount of said loan, which commission shall be considered as earned upon the signing of this agreement by the parties hereto."

In reliance on the agreement plaintiff went forward with the bond issue and sold, in advance of their issue, $23,100 worth and gave interim certificates. After considerable time and money had been expended defendants, by reason of certain disagreements, refused to execute the mortgage and repudiated the contract. By reason of this refusal plaintiff was obliged to repurchase the interim certificates at a premium of one per cent. and make payment of interest which had accrued on the certificates. To compensate it for its loss plaintiff brought this suit and recovered at the hands of a jury the sum of $8,750.

1. The defense in the main was that plaintiff was a money loaner and that the provision for services to be rendered defendants in the erection of the building and looking after the payments for material and labor was a mere subterfuge for the purpose of exacting and collecting an illegal rate of interest on the loan. The written contract provided for a charge of 8 per cent. for procuring the mortgage loan and rendering certain services in connection therewith. Considerable testimony was taken bearing on this question. We are not impressed with defendants' claim in this respect. Plaintiff, like many other companies of its kind doing business today in the large cities, assumes the attitude in the contract of an agent of defendant to float a mortgage loan with itself as trustee. For its services in connection with the matter it charged 8 per cent. of the loan. This may have been more than the services were worth, but we see nothing in the contract which leads us to conclude that the agreement was an usurious one, or that plaintiff posed in the contract in the attitude of a money loaner. This method of raising money to finance large and expensive structures in the cities has become so common that we may take notice of the relative position of trust company and client in

deals of this character. It will not be necessary, however, for us to dwell further upon this phase of the case, as the court submitted defendant's theory of usury to the jury, and they found against their contention.

2. While there are some other questions raised we think the meritorious question raised is whether the instructions of the court upon the question of damages were proper. The rule of damages given to the jury by the court was as follows:

"The alleged illegality relates solely to the commission of 8 per cent., or the sum of $10,000, and this is the question for you to consider and determine: Whether it was a *bona fide* contract, or whether it was, in fact, an illegal transaction — void because usurious. If you should find that this was a legal transaction, as it appears upon its face, then plaintiff is entitled to recover the sum of $10,000, the amount stated in the contract, less the expenses to which it would have been put in preparing and issuing and carrying to a conclusion the sale of the bonds, less the permanent overhead charges and expenses. Only those expenses which would have been incurred by the plaintiffs in the issuing and in making the sale of these bonds are to be deducted."

The general rule of damages in cases of this character is stated as follows:

"If the proof shows that profits would have been realized had the party not been prevented from performing the contract, they are recoverable; and the measure of profits as damages is the difference between the cost of doing the work and the price agreed to be paid. In considering items of profit or expense the courts are inclined to regard the magnitude of the contract and other elements of loss that may affect the defendant as well as the release from the care, trouble, risk and responsibility attending a full execution of the contract on the part of the plaintiff." 13 Cyc. p. 161.

This rule has been followed in the Michigan cases:

*Greenwood* v. *Davis,* 106 Mich. 230; *Scheible* v. *Klein,* 89 Mich. 376; *Rayburn* v. *Comstock,* 80 Mich. 448; *Leonard* v. *Beaudry,* 68 Mich. 312.

We think the trial court stated the true rule, but fell into error in directing the jury what items they should not include in making their deductions from the contract price. Upon this phase of the case the jury were instructed:

"In determining the damages in this case you are not to consider the expenses of the issue of the interim certificates, if you find for the plaintiff. These interim certificates, I have no doubt, were issued in good faith. The testimony of Mr. Gross is that he had permission from the securities commission, but in this case as submitted the proof was not sufficient for this court to submit this question to you for your consideration. The commission could not act through a mere verbal order given by its secretary or some other individual member; it must act as a commission, and the evidence of its action must be in writing and appear of record somewhere, and there is no evidence in this case that such permission was given. I, therefore, withdraw from your consideration the question of the issuance of the so-called interim certificates, and you will not allow any damages to plaintiff for the issue of the same."

The jury were instructed that plaintiff was entitled to recover the contract price less what it would necessarily have cost plaintiff to float a loan and perform the services agreed upon. A part of the expense of plaintiff in floating the loan was to advertise the loan and go to selling bonds at once. If it did this it would have to issue interim certificates. This appears to have been its habit in floating a loan and, therefore, would have been one of the incidental expenses in carrying out the contract, and should have been considered as a part of the cost of floating the loan. The mere fact that this particular loan was not authorized by the blue sky commission could not affect this ques-

tion one way or the other. The jury was trying to find out what it would have cost plaintiff, following its ordinary practice, to float this loan and render the services contracted for, and if this were one of the steps taken to float the loan, in the usual course of business, they would not be prevented from considering the cost of issuing interim certificates, simply because the particular certificates issued were unauthorized. The items paid as premium to repurchase, and the interest accrued on the interim certificates, were not proper items to consider, because that expense would not have been incurred in the ordinary course of floating a loan.

We are also of the opinion that the trial court was in error in instructing the jury that, in considering what it would have cost plaintiff to carry the contract to completion, they should not consider the item of overhead expense. This appears to be based upon the testimony of plaintiff that its overhead would have been the same whether they did or did not carry out the contract. If this particular contract had been executed according to its terms it would have required a certain amount of time and service, and this would have required a proportionate amount of overhead expense. While the office force were performing services in executing this contract it could not have performed like service on another contract. A certain amount of overhead expense for the year is incurred and, when occasion requires, this should be apportioned upon a percentage basis among the several contracts executed. The testimony in the present case estimated the proportionate overhead expense the present contract would have required. It was one of the items of expense that plaintiff would have incurred in carrying out the contract, and, when ascertained, should have been deducted from the contract price.

By reason of these errors the judgment must be reversed and set aside. It will be unnecessary to consider any of the other questions raised. A new trial will be ordered and defendants will recover their costs in this court.

WIEST, C. J., and FELLOWS, MCDONALD, CLARK, SHARPE, and STEERE, JJ., concurred. MOORE, J., did not sit.