*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

CEDRIC RICHARDSON,

      Plaintiff-Appellee,

v

BRIDGETT WRIGHT, also known as BRIDGET
LAMAR,

      Defendant-Appellant.

UNPUBLISHED
January 25, 2024

Nos. 361839; 362999
Wayne Trial court
LC No. 21-010834-CH

---

BRIDGETT WRIGHT,

      Plaintiff-Appellant,

v

CEDRIC RICHARDSON,

      Defendant-Appellee.

No. 361841
Wayne Trial court
LC No. 22-004695-CH

---

Before: CAVANAGH, P.J., and RICK and PATEL, JJ.

PER CURIAM.

In these consolidated appeals,[1] appellant Bridgett Wright brings several claims against appellee Cedric Richardson. In Docket No. 361839, Wright appeals by right the trial court's order granting sanctions under MCL 600.2591 and summary disposition under MCR 2.116(C)(10) in favor of Richardson. In Docket No. 361841, she appeals an order of dismissal. Finally, in Docket

---

[1] *Richardson v Wright*, unpublished order of the Court of Appeals, entered May 9, 2023 (Docket Nos. 361839, 361841, and 362999).

No. 363999, she appeals an order determining the reasonable amount of sanctions. We affirm in part, reverse in part, and remand for further proceedings.

## I. FACTUAL BACKGROUND

Around July 21, 2021, the parties entered into a Purchase Agreement under which Richardson agreed to purchase certain real property from Wright, including a residence located in Van Buren Township. Richardson was represented by a real-estate agent of Coldwell Banker Weir and Manuel (CBWM), Dawn M. Palmer, who created the Purchase Agreement using CBWM's standard purchase agreement form. In essence, this required Palmer to fill in the blanks of the Purchase Agreement, as applicable. Wright's husband, also a real-estate agent, represented her in the deal.

A number of provisions in the purchase agreement are relevant to this appeal. Under Paragraph 2 of the Purchase Agreement, the parties agreed that Richardson would pay $449,000 for the house, and that in return, Wright would "convey marketable title to [Richardson] by Warranty Deed, subject to existing building and use restrictions, easements, and zoning ordinances of record." Paragraph 3 of the Purchase Agreement indicated that the method of payment was a cash sale subject to a new mortgage for 90% of the sale price. Paragraph 6 required an earnest money deposit of $5,000, payable within four days after Wright accepted the offer from Richardson, although an addendum signed the same day increased the earnest money deposit from $5,000 to $7,500. Additionally, under Paragraph 40, titled "Other Terms and Conditions," Richardson's agent included the following language:

> If the appraisal comes in lower that [sic] the purchase price, Purchaser will pay $5,000.00 over the appraised price up to the purchase price of $449,000.00.

Paragraph 30 provided that, "[i]n the event of default by Seller hereunder, the Buyer may, at Buyer's option, elect to specifically enforce the terms herein or demand, and be entitled to, a refund of the entire earnest money deposit in full termination of this Agreement, and this shall be Buyer's sole remedy." On the same day as entering into the Purchase Agreement, Richardson remitted the earnest money deposit via a check for $7,500 written to CBWM, to be held in trust in accordance with the Purchase Agreement.[2]

On August 5, 2021, Jamel Anderson, of Jayco Real Estate Services, Inc., submitted an appraisal on behalf of the lender. The appraisal noted that no updates had been made to the property in the prior 15 years and that the property was in "overall average condition." Using the

---

[2] The check was written from the account of "Imperial Care Services, LLC," and was not signed by Richardson. However, the check included the notation, "For Earnest Money 49109 Paloma [the subject property]."

sales comparison approach,[3] the appraiser valued the property at $405,000 on the basis of three comparable sales within the last 12 months.

About a week after the appraisal, Richardson's agent e-mailed Wright's agent to inform him that Richardson understood the purchase price of the subject property to be $410,000, given that the house had been appraised for less than the purchase price. Richardson's agent indicated that Richardson expected Wright to honor the Purchase Agreement. Wright's agent responded that she could not agree to that price and, in a series of e-mails, sought to terminate the Purchase Agreement.

Consequently, Richardson filed a complaint against Wright, alleging breach of contract and seeking specific performance of the Purchase Agreement. Five days later, Richardson filed a notice of lis pendens with the court. Approximately a week after that, the trial court entered a temporary restraining order prohibiting Wright from selling or marketing the property. Eventually, Wright answered the complaint and generally denied liability. She asserted that the "purported appraisal supplied by Plaintiff raises significant questions of accuracy, credibility, bias and authenticity[.]" Wright also raised multiple defenses, including that Richardson materially breached the Purchase Agreement first and that his claim was barred by reason of "fraud, unclean hands, collusion and/or conspiracy."

After several months of discovery, Richardson moved for summary disposition under MCR 2.116(C)(10), and for sanctions under MCL 600.2591(1), on the basis that Wright's defenses were frivolous. In his brief in support, Richardson argued that the parties entered into a valid binding contract for the sale of the subject property and that Wright breached that contract by refusing to sell the property for the agreed-upon price.

Wright responded with several different arguments. She agreed that a valid contract existed, but asserted that summary disposition was not proper because Paragraph 40, at a minimum, was ambiguous, requiring the matter to be put before a jury. Wright also argued that Richardson materially breached the Purchase Agreement first, and that he failed to personally pay the security deposit. Wright added that the Purchase Agreement was unenforceable because Paragraph 40 was an illusory promise because it allowed Richardson "to use any appraisal, even one ordered and paid for by himself or his agent . . . to lower the agreed upon purchase price in the [Purchase Agreement] to an unlimited degree." Wright continued to allege that Richardson had colluded with his agents—namely his realtor, the appraiser, and the mortgage officer—to defraud her and purchase the property at an artificially deflated price.

A week before the motion hearing, Wright filed a separate complaint against Richardson, alleging slander of title and statutory false encumbrance, and seeking to quiet title. At the motion

---

[3] The "sales comparison approach" is a method of valuing property that uses "an analysis of comparable sales, contract sales, and listings of properties that are the most comparable to the subject property." Fannie-Mae, *Selling Guide* <https://selling-guide.fanniemae.com/Underwriting-Property-Projects/Appraisal-Requirements/Appraisal-Report-Assessment/Comparable-Sales/1044708121/What-is-the-sales-comparison-approach-to-value-or-market-data-approach.htm> (accessed December 20, 2023).

hearing, the trial court admonished Wright's counsel for filing the new complaint, stating that it was, "wholly inappropriate," and noting that Wright's complaint was "a counterclaim . . . this late in the game of slander of title." After hearing argument from the parties, the court issued its ruling from the bench:

> According to the terms of the Purchase Agreement, because the appraisal came in under the 449,000, [Richardson] was to pay the 405 plus the 5,000 for a total purchase price of 410,000. [Wright] refused to honor the terms of the Purchase Agreement by refusing to sell the property for $410,000.
>
> * * *
>
> Paragraph 30, the Purchase Agreement provides that in the event of default by the seller, the buyer may at buyer's option elect to specifically enforce the terms herein or demand—and be entitled to a refund of the entire earnest money deposit.
>
> [Richardson] herein pursued Option No. 1 to specifically perform.
>
> * * *
>
> And at the end of the day the Court does find the case is really one of a series of red herring upon red herring upon red herring.
>
> We've got the selection of the appraiser. We've got the deposit. We've got the 401k and Plaintiff's financial status. We've got the loan application . . . . I'm not going to state it, but a deal is a deal is a deal.
>
> There's been no other appraisal, . . . . We do have an appraisal and the appraisal provides what it provides, and it came in at 405,000, not 200 or not $250,000.
>
> And the Court does believe there is no genuine issue of material fact as to whether [Wright] breached the terms of the Purchase Agreement and . . . [Richardson] is entitled to specific performance of the contract.
>
> [Wright] has made just a series of I call them red herrings, we can also label them . . . as baseless claims that there's some issue with the appraisal. [Wright] has provided absolutely no factual or documented support that the appraisal is somehow faulty, and for those reasons and as more fully set forth in [Richardson]'s brief the Court is going to grant the Motion for Summary Disposition.
>
> As to the new case the Court doesn't have the case number handy in front of me, the Court is going to grant -- is going to dismiss same and likewise grant summary disposition for the following reasons.
>
> First of all the Court finds it to be improperly filed. The Court finds it to be untimely filed. The Court finds it to be frivolous and meant to harass. And the Court does believe that in light of what the Court just did in the underlying first

-4-

case that it is moot and will be dismissing that case with prejudice, as well as the underlying case with prejudice finding it to be frivolous and entitling [Richardson] to costs as to that matter.

In response to a request for clarification by Richardson's counsel, the trial court also indicated it was granting sanctions:

The Court's granting it. If this case isn't frivolous, there's no case that would meet the standard for frivolous. This is a clear, Paragraph 40, deal is a deal. We've been litigating this case for however many months over something that a 12 year old could read and understand about an appraisal and the $5,000 provision. It's frivolous, you're entitled to sanctions and costs.

Thereafter, the trial court entered a written order granting Richardson's motion for summary disposition. The court ordered that the Purchase Agreement remain in effect and indicated that the purchase price of the property was $410,000. The court further concluded that Richardson was entitled to specific performance of the contract, as well as costs and attorney fees under MCL 600.2591. Finally, the court entered a written order dismissing Wright's complaint with prejudice for the reasons stated on the record.

After entry of the summary disposition and sanctions order, Richardson filed a motion to determine the amount of sanctions. He initially sought approximately $22,000 in fees and costs and attached his counsel's affidavit of fees and costs in support, which detailed the fees that were incurred for the work performed. Wright raised 14 objections in response, primarily asserting that certain services were unnecessary and that Richardson had improperly included appellate fees in his estimate. Richardson conceded that some appellate fees had been improperly included, and corrected the amount sought in a supplemental reply. He also added additional fees that had been incurred between the time of the original motion and his reply, for a total of $27,267.17.

In the interim, Wright refused to abide by the trial court's summary disposition order requiring her to specifically perform under the Purchase Agreement and close the sale. After two show cause hearings, the trial court entered a default judgment against her. The default judgment mandated that the transfer of the property be recorded with the Wayne County Register of Deeds in the subject property's chain of title. It further permitted Richardson's attorney to sign the documents necessary to effectuate the sale on behalf of Wright, and required Wright to pay Richardson $5,000 "for her failure to sign the closing documents for the Subject Property ordered by this Court."

A day after entry of the default judgment, the trial court held a hearing to determine the amount of sanctions, as Wright had additionally sought a setoff of the $5,000 fine against the sanctions award. After oral argument, the trial court stated that it was awarding Richardson $26,967.17 in reasonable attorney fees and costs.[4] After reciting the test for arriving at a

---

[4] This number reflected deductions for appellate fees in the original motion and an additional $275 for appellate fees that Richardson's counsel admitted had been improperly included in the supplemental reply.

reasonable fee under *Smith v Khouri*, 481 Mich 519, 531-532; 751 NW2d 472 (2008), and *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016), the trial court first found that the rate requested was reasonable, noting that it was below the median number sought by real-estate attorneys within the geographic area. With respect to the hours expended, the court reasoned:

> Under the *Smith* case, once a reasonable hourly rate is determined by the Court, the hourly rate should be multiplied by the reasonable number of hours expended. [Richardson's counsel] has attached an affidavit of cost[s] and fees and has updated same, and the Court concludes that the number of hours expended in connection with this case is reasonable and rejects any suggestion that the hours were duplicative or unnecessary.

Having arrived at a baseline figure, the trial court considered the *Pirgu* factors, but did not make any adjustments.

Turning to the $5,000 fine, the trial court denied Wright's request to set off the fine against the award of reasonable attorney fees and costs. The court reasoned that that sanction had "nothing to do with attorney fees" and "was an exercise of the Court's contempt powers for a clear violation of a duly entered and non-stayed order of this Court." Several days later, the trial court entered a written order granting Richardson's motion for sanctions under MCL 600.2591(1), and awarding him $26,967.17 in attorney fees and costs incurred through August 12, 2022.

## II. ANALYSIS

### A. DOCKET NOS. 361839 AND 361841

In Docket Nos. 361839 and 361841, Wright raises claims related to the trial court's grant of summary disposition in favor of Richardson, arguing that the Purchase Agreement was either unenforceable or ambiguous and that specific performance was an improper remedy. She additionally claims that no grounds for sanctions existed under MCL 600.2591.

This Court reviews de novo a trial court's decision on a motion for summary disposition under MCR 2.116(C)(10). A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Maiden v Rozwood*, 461 Mich 109, 119-120; 597 NW2d 817 (1999). A party is entitled to summary disposition under MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." *Morelli v City of Madison Hts*, 315 Mich App 699, 702; 890 NW2d 878 (2016).

"The proper interpretation of a contract is a question of law, which this Court reviews de novo." *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 47; 664 NW2d 776 (2003). In construing contractual language, this Court's goal "is to determine the intent of the contracting parties," the best indicator of which is the language used. *Quality Prod & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 375; 666 NW2d 251 (2003). "This Court examines contractual language and gives the words their plain and ordinary meanings[,]" *Coates v Bastian Bros, Inc*, 276 Mich App 498, 503; 741 NW2d 539 (2007), while also giving "effect to every word or phrase as far as practicable." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 467; 663 NW2d 447 (2003). If the language of the contract is unambiguous, then it is "reflective of the parties' intent as a matter

of law." *Quality Prod & Concepts Co*, 469 Mich at 375. "[U]nambiguous contracts are not open to judicial construction and must be *enforced as written*." *Rory v Continental Ins Co*, 473 Mich 457, 468; 703 NW2d 23 (2005). A contract is ambiguous if its provisions are capable of more than one interpretation or its provisions irreconcilably conflict. *Klapp*, 468 Mich at 467; *Coates*, 276 Mich App at 503. However, "[c]ourts may not impose an ambiguity on clear contract language." *Coates*, 276 Mich App at 503.

Regarding an award of sanctions for a frivolous defense, this Court reviews for clear error a trial court's finding that an action or defense is frivolous. *Kitchen v Kitchen*, 465 Mich 654, 661; 641 NW2d 245 (2002). "A decision is clearly erroneous where, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id.* at 661-662.

## 1. ENFORCEABILITY OF THE CONTRACT

According to Wright, the Purchase Agreement is unenforceable because the parties did not mutually assent to a purchase price because that term was too uncertain. Wright explains that because the Purchase Agreement sets forth both a firm price and a manner in which the price may be ascertained on the basis of the appraisal, the Purchase Agreement is inherently indefinite. This argument, in essence, asserts that the Purchase Agreement is not enforceable because no contract was ever formed, either due to lack of mutual assent or lack of definite terms. However, Wright conceded in the trial court that a valid agreement existed. Given that fact, Wright cannot now take an inconsistent position on appeal. *Weiss v Hodge*, 223 Mich App 620, 636; 567 NW2d 468 (1997) (recognizing that a litigant cannot concede an issue before the trial court and take an inconsistent position on appeal). Moreover, our review of the record shows that Wright did not raise either of these arguments in the proceedings in the trial court. Michigan follows the "raise or waive" rule of appellate review, whereby an issue that is not raised in the trial court is waived on appeal. *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008). Accordingly, we deem these claims waived, and we will not further consider them.

Wright next argues that the trial court's interpretation leads to an absurd and unreasonable result, rendering the Purchase Agreement unenforceable. According to Wright, the trial court's attempt to harmonize Paragraphs 2 and 40 resulted in an interpretation wherein the price "can be literally any amount, plus $5,000[.]" We disagree.

First, Wright's argument mischaracterizes the record. The trial court did not conclude that the Purchase Agreement allowed for any amount plus $5,000 to be the purchase price. Rather, the trial court recognized that Paragraph 2 set the purchase price at $449,000, but that Paragraph 40 required Richardson to pay $5,000 above the appraised price, up to $449,000, if the appraisal came in lower than the purchase price. Consequently, Wright's contention that the trial court's interpretation was unreasonable by allowing the purchase price to be any amount plus $5,000, is not supported by the record.

Wright otherwise argues that "no rational seller of real estate would agree to a 'price' term that allows the buyer to pay *anything* a randomly assigned appraiser says the property is worth when the purchase agreement clearly states that the 'Buyer *agrees*' to pay a fixed purchase price." However, even assuming that a reasonable buyer would not enter into such an agreement, "[a]

mere judicial assessment of 'reasonableness' is an invalid basis upon which to refuse to enforce contractual provisions. Only recognized traditional contract defenses may be used to avoid the enforcement of the contract provision." *Rory*, 473 Mich at 470.

Indeed, none of the caselaw cited references the invalidation of a contract on the basis that application of its terms would yield absurd results. Rather, those cases merely rejected a litigant's proposed interpretation of a contract on the basis that the interpretation would lead to unreasonable conditions or an absurd outcome. See, e.g., *Bodnar v St John Providence, Inc*, 327 Mich App 203, 222-224; 933 NW2d 363 (2019) (rejecting litigant's interpretation of "current pay rate" to include overtime and benefits because that term did not contemplate their inclusion, and to require their inclusion would impose an unreasonable condition); *Allstate Ins Co v Tomaszewski*, 180 Mich App 616, 619-620; 447 NW2d 849 (1989) (rejecting proposed definition of "insured person" that would exclude coverage of biological children, but not stepchildren). Accordingly, not only has Wright failed to demonstrate that the trial court's interpretation was absurd, she has also failed to cite any binding authority that unreasonableness renders a contract unenforceable.

Relatedly, Wright alternatively argues that even if the Purchase Agreement is enforceable, Paragraph 40 of the agreement is ambiguous and its interpretation is a matter for a jury. She posits that an ambiguity exists because the Purchase Agreement contains a fixed price and a contingent price that creates an irreconcilable conflict and also because Paragraph 40 does not provide a process for selecting an appraiser or identify the method of appraisal. We again disagree.

Reading Paragraphs 2 and 40 together does not demonstrate an irreconcilable conflict. Paragraph 2 sets the purchase price, providing that "Buyer agrees to pay the sum of [$449,000.00]." Paragraph 40, titled "Other Terms and Conditions," provides that "[i]f the appraisal comes in lower [than] the purchase price, Purchaser will pay $5,000.00 over the appraised price up to the purchase price of $449,000.00." It is plain that Paragraph 40 contained, in effect, an exception to the set price in Paragraph 2, which applied only if the appraisal was lower than the purchase price. In that instance, the purchase price would be the appraisal price plus $5,000, up to the original sale price of $449,000. If the appraisal was *not* lower than $449,000, then Paragraph 40 would not apply, and Richardson would pay the agreed-upon sale price of $449,000, consistent with Paragraph 2. In this way, Paragraphs 2 and 40 operate harmoniously to arrive at the appropriate purchase price. Accordingly, because Paragraphs 2 and 40 could each be given operative effect, there is no inherent, irreconcilable conflict between them.

Wright nevertheless asserts that because the term "appraisal" in Paragraph 40 does not identify a process for selecting an appraiser or specify the appraisal method to be employed, it is ambiguous. She explains that it could be interpreted to mean that an independent appraisal should have been conducted by an appraiser selected by both parties. But contrary to this argument, that the Purchase Agreement neither defines the term "appraisal," nor provides a process for selecting an appraiser or appraisal method, does not render the term ambiguous. See *Vushaj v Farm Bureau Gen Ins Co*, 284 Mich App 513, 515; 773 NW2d 758 (2009) ("The mere fact that a term is not defined in a policy does not render that term ambiguous."). Additionally, Wright's interpretation improperly adds language to the Purchase Agreement that does not exist. See *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 199-200; 747 NW2d 811 (2008) ("[I]t has long been the law in this state that courts are not to rewrite the express terms of contracts."); *Northline Excavating, Inc v*

*Livingston Co*, 302 Mich App 621, 628; 839 NW2d 693 (2013) ("We cannot read words into the plain language of a contract.").

More fundamentally, a fair and contextual reading of Paragraph 40 demonstrates that the term "appraisal" can only be interpreted to mean one thing. Significantly, the term "appraisal" is qualified by the term "the," which is a definite article denoting a particular appraisal, not just *any* appraisal. See *Barrow v Detroit Election Comm*, 301 Mich App 404, 414; 836 NW2d 498 (2013) (recognizing that the word "the" has a particularizing effect and denotes a specific item not a general one). Paragraph 3 of the Purchase Agreement made the sale contingent on Richardson's ability to secure a mortgage for 90% of the purchase price, and obligated him to initiate a mortgage application within five days of receipt of Wright's acceptance. As a matter of common knowledge, mortgage applications involve an appraisal by the *lender*. MRE 201(b)[5]; cf. *Fed Bond & Mtg Co v Burstein*, 222 Mich 88, 91-92; 192 NW 549 (1923) (taking judicial notice of common financing methods for the erection of large buildings). Consequently, absent any other reference to an appraisal within the Purchase Agreement, the appraisal referred to and contemplated by the parties in Paragraph 40 must be the appraisal performed by the lender for purposes of Richardson's loan application. Wright has failed to demonstrate that a fair reading of the term "the appraisal" lends itself to more than one meaning.[6]

In sum, Wright has failed to demonstrate a genuine issue of material fact as to whether the Purchase Agreement is either unenforceable or ambiguous. Accordingly, we conclude that the trial court did not err by granting summary disposition in favor of Richardson with respect to his breach-of-contract claim.

## 2. SPECIFIC PERFORMANCE

Wright next argues that the trial court erred by ordering specific performance because the essential terms of the Purchase Agreement, mainly pertaining to consideration, are indefinite. We disagree.

Specific performance is an equitable remedy, *Rowry v Univ of Mich*, 441 Mich 1, 10; 490 NW2d 305 (1992), and "contracts involving the sale of land are generally subject to specific

---

[5] Under MRE 201(b), this Court may take judicial notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

[6] As Richardson notes, Wright's own actions belie her claim that she believed "appraisal" in Paragraph 40 to mean a mutually agreed-upon independent appraisal. Wright did not object when the lender's appraiser inspected the property for purposes of the loan application and nothing in the record shows that she otherwise contacted Richardson in an effort to mutually agree on a different appraiser. Under these circumstances, Wright's arguments appear somewhat disingenuous, and merely reflect seller's remorse for entering into a deal that did not pan out in her favor.

performance[,]" *In re Egbert R Smith Trust*, 480 Mich 19, 26; 745 NW2d 754 (2008). However, specific performance is not proper

> [w]henever it appears that material matters are not clear, certain and complete, but are left by the parties so obscure or undefined that the court cannot say whether or not the minds of the parties met upon all the essential particulars, or if they did, the court cannot say exactly upon what substantial terms they agreed[.] [*Henry v Rouse*, 345 Mich 86, 92; 75 NW2d 836 (1956).]

In this matter, the parties had a meeting of the minds on all essential terms related to the sale of the subject property, including the price. In particular, the express words of the Purchase Agreement support that the parties mutually agreed to a purchase price, subject to adjustment based on the results of the appraisal. Under the agreement, Richardson "agree[d] to pay the sum of" $449,00.00. In return, the agreement indicated that Wright "shall convey" marketable title in the form of a warranty deed. Under "Other Terms and Conditions," the parties further agreed that "if the appraisal comes in lower [than] the purchase price, Purchaser will pay $5,000 over the appraised price up to the purchase price of $449,000.00." These price terms are reasonably definite. Further, by their visible acts, the parties agreed to be bound by said terms, as both of them initialed each page of the Purchase Agreement and signed the agreement's last page.

Given the foregoing, it is plain that the Purchase Agreement's essential terms, including the parties' promises and required performances, are not uncertain or indefinite. Because the terms are reasonably clear and, indeed, are far from obscure, Wright's argument that Richardson is not entitled to specific performance must fail. Accordingly, we conclude that the trial court did not err by concluding that Richardson is entitled to specific performance consistent with the terms of the Purchase Agreement.

### 3. SANCTIONS UNDER MCL 600.2591

Wright further argues that the trial court erred by determining that Richardson was entitled to sanctions. We disagree.

MCL 600.2591(1) mandates, upon the motion of any party, a trial court to award to the prevailing party in a civil action costs and fees against the nonprevailing party and their attorney if the court finds that "a civil action or defense to a civil action was frivolous." MCL 600.2591(3)(a) defines "frivolous" to mean:

> (*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

> (*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

> (*iii*) The party's legal position was devoid of arguable legal merit.

"The purpose of imposing sanctions for asserting frivolous claims is to deter parties and attorneys from filing documents or asserting claims and defenses that have not been sufficiently investigated and researched or that are intended to serve an improper purpose." *BJ's & Sons Constr Co v Van*

*Sickle*, 266 Mich App 400, 405; 700 NW2d 432 (2005) (quotation marks and citation omitted). "The mere fact that [a litigant does] not ultimately prevail does not render [a claim or defense] frivolous." *Kitchen*, 465 Mich at 662. And "[n]ot every error in legal analysis constitutes a frivolous position." *Id*. at *663*.

Here, the trial court found that this case had been a series of "red herring upon red herring," referring, in part, to Wright's defenses related to the selection of the appraiser and the payment of the security deposit. More particularly, the trial court found that Wright had made a "series" of "baseless claims that there's some issue with the appraisal" and that she had "provided absolutely no factual or documented support that the appraisal is somehow faulty." The court further stated:

> If this case isn't frivolous, there's no case that would meet the standard for frivolous. This is a clear, Paragraph 40, deal is a deal. We've been litigating this case for however many months over something that a 12 year old could read and understand about an appraisal and the $5,000 provision. It's frivolous, you're entitled to sanctions and costs.

While the court did not specify which Subparagraph of MCL 600.2591(3)(a) it found applicable, it appears to have awarded sanctions on the basis of MCL 600.2591(3)(a)(*ii*), that Wright had no reasonable basis to believe the facts underlying her defenses were true, and MCL 600.2591(3)(a)(*iii*), that her position was devoid of arguable legal merit. "A claim is devoid of arguable legal merit if it is not sufficiently grounded in law or fact[.]" *Meisner Law Group PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 733; 909 NW2d 890 (2017) (quotation marks and citation omitted).

But even assuming that Wright's argument interpreting Paragraph 40 was not frivolous, we cannot conclude that the trial court clearly erred by awarding sanctions. Considering Wright's defense that the appraisal was defective or corrupted by collusion, the record supports the court's conclusion that Wright had no reasonable basis to believe the facts supporting her defense were in fact true. From the outset of the litigation, Wright alleged that the appraisal raised "significant questions of accuracy, credibility, bias, and authenticity," and that Richardson had engaged in some type of conspiracy or collusion to defraud her.[7] Discovery, however, yielded no such defects in the appraisal, nor any factual basis to support the claim that Richardson colluded or conspired with the appraiser to make a final assessment that benefited him. Notwithstanding the lack of any factual support, Wright continued to argue at the summary disposition stage that Richardson selected the appraisal's valuation in the appraisal documents tendered to Wright, thus precluding him from enforcing the Purchase Agreement. But because no basis in fact existed to support Wright's speculative belief that the appraisal was somehow doctored by Richardson for his own benefit, the trial court did not clearly err by concluding that Wright's defense that the appraisal was "somehow faulty" was frivolous.

Likewise, Wright's defense that the Purchase Agreement was illusory—because it allowed Richardson unfettered discretion with respect to the purchase price—was far from a legitimate,

---

[7] Nothing in the record supports that Wright, at the time, based these allegations on anything other than conjecture.

colorable claim. Anyone (including, as the trial court noted, a 12-year-old) reading Paragraph 2 and Paragraph 40 of the Purchase Agreement together could understand that Richardson did not have unfettered discretion to select whatever purchase price he would like. Given the plain language of the Purchase Agreement, Wright and her counsel had no reason to believe that the facts underlying this defense were true. Accordingly, Wright's illusory-promise defense, which was based on facts that she knew, or had reason to know, did not exist at the time she asserted the defense, was also frivolous. Consequently, the trial court's decision to award sanctions under MCL 600.2591 was proper.

Finally, in her reply brief, Wright asserts that the trial court erred as matter of law because it determined that she was "unable to support her claim, not that she had no reasonable belief in the truth of her defense at the time it was asserted." Wright cites *Robert A Hansen Family Trust v FGH Indus, LLC*, 279 Mich App 468, 486; 760 NW2d 526 (2008), for the proposition that "[t]he determination whether a claim or defense is frivolous must be based on the circumstances at the time it was asserted." Wright did not raise this argument, which proposes an alternative basis on which to reverse the trial court's decision to award sanctions, in her principal brief. Reply briefs "must be confined to rebuttal, and a party may not raise new or additional arguments in its reply." *Shelton v Auto-Owners Ins Co*, 318 Mich App 648, 660; 899 NW2d 744 (2017); MCR 7.212 (G). Consequently, her argument is not properly before this Court. See *Shelton*, 318 Mich App at 660 (indicating that an "alternative" argument is not a rebuttal argument within the meaning of MCR 7.212(G)).

## B. DOCKET NO. 362999

In Docket No. 362999, Wright raises claims related to the trial court's decision determining the amount of reasonable attorney fees and costs without an evidentiary hearing.

This Court reviews for an abuse of discretion an award of attorney fees and costs. *Pirgu*, 499 Mich at 274. A trial court's "decision that an evidentiary hearing is not warranted is [also] reviewed for an abuse of discretion." *Kernen v Homestead Dev Co*, 252 Mich App 689, 691; 653 NW2d 634 (2002). A trial court "abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes." *Pirgu*, 499 Mich at 274.

## 1. EVIDENTIARY HEARING

Wright first argues that the trial court abused its discretion as a matter of law by failing to hold an evidentiary hearing to determine the reasonable amount of attorney fees. She specifically disputes the reasonableness of the hours billed, and argues that if a factual dispute with respect to hours billed exists, a party is entitled to an evidentiary hearing. She further contends that a remand is proper in this case because the trial court provided no independent analysis to explain its decision.

With respect to the calculation of reasonable attorney fees, Michigan courts apply the methodology set forth in *Pirgu*, 499 Mich at 281. *Pirgu* directs that a court "must begin its analysis by determining the reasonable hourly rate customarily charged in the locality for similar services." *Id*. The trial court then "must then multiply that rate by the reasonable number of hours expended in the case to arrive at a baseline figure." *Id*. In determining whether the number of hours

expended is reasonable, the trial court "should exclude excessive, redundant or otherwise unnecessary hours regardless of the attorneys' skill, reputation or experience." *Smith*, 481 Mich at 532 n 17 (quotation marks and citation omitted). With respect to determining both the rate and hours, a trial court is "obliged to make an *independent* determination with regard to a reasonable amount of fees." *Mich Tax Mgt Servs Co v Warren*, 437 Mich 506, 511; 473 NW2d 263 (1991).

Having reached a baseline figure, the court is to then consider whether an upward or downward adjustment is appropriate based on the following nonexclusive list of factors:

> (1) the experience, reputation, and ability of the lawyer or lawyers performing the services,
>
> (2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly,
>
> (3) the amount in question and the results obtained,
>
> (4) the expenses incurred,
>
> (5) the nature and length of the professional relationship with the client,
>
> (6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer,
>
> (7) the time limitations imposed by the client or by the circumstances, and
>
> (8) whether the fee is fixed or contingent. [*Pirgu*, 499 Mich at 282.]

The burden is on the fee applicant to establish that the hourly rate is reasonable and also to establish the hours worked. *Smith*, 481 Mich at 531-532.

"Generally, a trial court should hold an evidentiary hearing when a party is challenging the reasonableness of the attorney fees claimed." *Kernen*, 252 Mich App at 691. "However, if the parties created a sufficient record to review the issue," and the trial court adequately explains its reasoning, an evidentiary hearing is not required. *Sabbagh v Hamilton Psychological Servs, PLC*, 329 Mich App 324, 359; 941 NW2d 685 (2019) (quotation marks and citation omitted); *Head v Phillips Camper Sales & Rental, Inc*, 234 Mich App 94, 113; 593 NW2d 595 (1999).[8]

In the instant matter, Richardson submitted a detailed billing record showing the attorney fees sought in connection with the litigation. In response, Wright contested 14 billing entries as unnecessary, primarily related to work performed in pursuance of (1) a temporary restraining order and a motion to show cause, which Wright alleged was unnecessary because a lis pendens on the

---

[8] Wright cites *Smith* to suggest that whenever an evidentiary hearing is requested with respect to a factual dispute regarding the reasonableness of the hours billed, a trial court must hold an evidentiary hearing and the failure to do so is an abuse of discretion. The Court in *Smith* did not make such a pronouncement.

home already protected Richardson's claim; (2) a motion to quash, which Wright alleged was unnecessary because she had a right to discovery; (3) a claim of appeal, for which Wright posited the trial court cannot award fees; and (4) fees incurred for pursuing fees. Before the hearing, Richardson submitted two updated billing invoices seeking additional fees. At the hearing, Wright's counsel, only having had four days to review the supplemental invoices, noted he had not had a chance to respond in writing and orally objected to "various" entries on "July 13th, July 20th, July 22nd, July 28th, July 29th, August 12th for various reasons, including, but not limited to time being billed for doing research, which was unnecessary and should not be awarded." At the close of argument, with respect to the reasonable number of hours expended, the court ruled:

> [O]nce a reasonable hourly rate is determined by the Court, the hourly rate should be multiplied by the reasonable number of hours expended. [Richardson's counsel] has attached an affidavit of cost[s] and fees and has updated same, and the Court concludes that the number of hours expended in connection with this case is reasonable and rejects any suggestion that the hours were duplicative or unnecessary.

Whether the number of hours billed was reasonable here could properly be resolved without an evidentiary hearing, as all of Wright's challenges could be resolved by reference to the record and argument from the parties. For example, the record itself was adequate to evaluate whether requesting fees for fees was proper, and whether billing related to preparation of a temporary restraining order was necessary, given that a lis pendens had been filed. Indeed, on appeal, Wright does not point to any specific challenge to the claimed fees that would require the production of evidence at an evidentiary hearing to resolve the objection.[9] Accordingly, the trial court did not abuse its discretion by determining the amount of fees without an evidentiary hearing.

The closer question is whether the trial court adequately explained its rationale for adopting the hours billed as reasonable. In concluding that "the number of hours expended in connection with this case is reasonable," the trial court provided no explanation regarding why those hours were reasonable other than to reject Wright's suggestion that the hours were "duplicative or unnecessary" without explanation. The court simply adopted Richardson's proposed hours billed as reasonable without providing any explanation to support that the hours were, in fact, reasonable. Accordingly, there is no way for this Court to discern whether the trial court simply reviewed the hours submitted and effectively rubber-stamped them, or whether it made an original determination regarding the reasonableness of the hours expended, as it is bound to do. See *Warren*, 437 Mich at 511-512.

Because of the conclusory nature of the trial court's decision, it is impossible for this Court to determine whether the trial court's wholesale adoption of Richardson's hours billed was outside the range of principled outcomes. Under these circumstances, we remand this matter to the trial

---

[9] An example of a challenge that would have required an evidentiary hearing would be an objection that the hours billed were excessive, because this claim would require a more involved analysis and testimony to establish how long certain types of tasks should take.

court for the limited purpose of providing an explanation regarding why the hours billed were reasonable and, if necessary, to adjust the attorney fee award consistent with its determination.[10]

## 2. SETOFF

Wright finally argues that the trial court erred by refusing to set off from the attorney fees award the $5,000 fine that she incurred for failing to abide by the trial court's orders. According to Wright, MCL 600.1721 precludes Richardson from accepting both the $5,000 fine and the full amount of reasonable attorney fees. We disagree.

At the outset, Wright does not cite any authority indicating that she is entitled to a setoff against sanctions. She cites language from *BJ's & Sons Constr Co*, 266 Mich App at 400, 408-409, stating that "a setoff against a sanctions award is permissible[,]" but that case does not explain the circumstances under which a party is entitled to a setoff. Absent citation to any rule or principle of law establishing that the facts of this matter support that a set off be granted, Wright's argument necessarily fails.

Wright does, however, cite MCL 600.1721 of the Revised Judicature Act, MCL 600.101 *et seq.*, relating to a court's contempt powers, as precluding Richardson from accepting both the $5,000 fine and the award of reasonable attorney fees. That provision provides:

> If the alleged misconduct has caused an actual loss or injury to any person the court shall order the defendant to pay such person a sufficient sum to indemnify him, in addition to the other penalties which are imposed upon the defendant. *The payment and acceptance of this sum is an absolute bar to any action by the aggrieved party to recover damages for the loss or injury.* [MCL 600.1721 (emphasis added).]

In her attempt to convince this Court that this provision is applicable, Wright claims that the court's use of its contempt power was intended to provide compensatory relief to Richardson, pointing to the fact that the $5,000 fine was payable to Richardson and not the court. By this logic, because Richardson has been compensated for his losses by the $5,000 fine, he cannot also accept the full amount of attorney fees because acceptance of the $5,000 "is an absolute bar to any action by the aggrieved party to recover damages for the loss or injury." MCL 600.1721.

The record refutes Wright's contention that the $5,000 fine was compensatory in nature. In denying her request to set off the fine against the award of reasonable attorney fees, the court reasoned that that fine had "nothing to do with attorney fees" and "was an exercise of the Court's contempt powers for a clear violation of a duly entered and non-stayed order of this Court." Additionally, a review of the earlier proceedings supports that the fee was not, in fact, ordered to

---

[10] While it is somewhat troubling that Wright allegedly had insufficient time to respond to Richardson's updated billing invoices and only orally raised those objections at the hearing, most without sufficient explanation, Wright has neither sought any relief in this regard nor cited any authority that would entitled her to relief. Accordingly, our remand to the trial court is limited to the record as it then existed before the trial court.

compensate Richardson for losses related to Wright's misconduct.  Indeed, the trial court made no findings related to losses that Richardson suffered as a result of Wright's misconduct.  Instead, the trial court imposed the fee only after Wright refused to abide by the court's order to close the sale on three occasions, at which point the court entered a default judgment requiring her to pay Richardson $5,000 "for her failure to sign the closing documents for the Subject Property ordered by this Court."  It follows that, because the trial court's exercise of its contempt power was not intended to compensate Richardson, the bar to recovery of losses due to contemptuous conduct under MCL 600.1721 is inapplicable.  Accordingly, Wright has not demonstrated any error with respect to the trial court's decision not to set off the $5,000 fine against the attorney fees award.

## III.  CONCLUSION

In Docket Nos. 361839 and 361841, we affirm.  In Docket No. 362999, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Michelle M. Rick
/s/ Sima G. Patel